# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

MARJORIE A. BERNA,

       Plaintiff,

  v.

BAYHEALTH MEDICAL CENTER, INC.,

       Defendant.

Civil Action No. 23-945-RGA

## MEMORANDUM OPINION

Gary E. Junge (argued), SCHMITTINGER & RODRIGUEZ, P.A., Dover, DE,

    Attorney for Plaintiff.

Stacy A. Scrivani, Alexis R. Gambale, STEVENS & LEE, P.C., Wilmington, DE; Lisa M.
Scidurlo, STEVENS & LEE, P.C., King of Prussia, PA; Michael M. Greenfield (argued), Sasha
A. Phillips, STEVENS & LEE, P.C., Philadelphia, PA; Theresa M. Zechman, STEVENS &
LEE, P.C., Lancaster, PA,

    Attorneys for Defendant.

February   , 2024

ANDREWS, U.S. DISTRICT JUDGE:

Before me is Defendant's Motion to Dismiss. (D.I. 6). I have considered the parties'
briefing. (D.I. 7, 8, 9). I heard oral argument on January 4, 2024 on a group of cases, including
the present action, involving religious discrimination claims with regards to Defendant's
COVID-19 vaccine policy. (Hearing Tr.).[1]  For the reasons set forth below, this motion is
GRANTED in part and DISMISSED as moot in part.

## I.   BACKGROUND

This case stems from the COVID-19 pandemic and a healthcare provider's efforts to
respond to government vaccination policy. The Complaint (D.I. 1) alleges the following facts.

On August 12, 2021, Governor John Carney ordered all Delaware state health care
employees either to become vaccinated for the COVID-19 virus by September 30, 2021 or to
submit to regular testing for the COVID-19 virus. In November 2021, the Centers for Medicare
& Medicaid Services ("CMS") issued a COVID-19 vaccine mandate requiring certain health care
facilities, including Defendant, to ensure their staff members were all either vaccinated against
COVID-19 or had obtained medical or religious exemptions to taking the vaccine.

Pursuant to Defendant's vaccination policy, employees seeking religious exemption
requests were required to submit forms explaining the religious beliefs that formed their basis of
their objection to the COVID-19 vaccine. (*See* D.I. 1-1, Ex. A). Employees could attach
additional materials, such as letters from religious leaders, to support their exemption request.
(*Id.*).

Employees who had their religious exemption requests rejected, and continued to refuse
the COVID-19 vaccine, were terminated on February 28, 2022. Plaintiff subsequently filed the

---

[1] Citations to the transcript of the argument are in the format "Hearing Tr. at __."

present suit raising religious discrimination claims against Defendant under Title VII (Count I) and the Delaware Discrimination in Employment Act ("DDEA") (Count II). *See* 42 U.S.C. § 2000e; DEL. CODE ANN. tit. 19, § 711. Defendant moves to dismiss Plaintiff's claims pursuant to FED. R. CIV. P. 12(b)(6). (D.I. 6).

## II.   LEGAL STANDARD

### A.  Rule 12(b)(6)

Rule 8 requires a complainant to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 12(b)(6) allows the accused party to bring a motion to dismiss the claim for failing to meet this standard. A Rule 12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the complainant, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

The factual allegations do not have to be detailed, but they must provide more than labels, conclusions, or a "formulaic recitation" of the claim elements. *Id.* at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."). Moreover, there must be sufficient factual matter to state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facial plausibility standard is satisfied when the complaint's factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks omitted)).

3

### B. Failure to Accommodate

Title VII makes it unlawful for an employer to discriminate against an employee based on that employee's religion. 42 U.S.C. § 2000e-2(a)(1). The statute defines "religion" to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

To establish a prima facie case of religious discrimination under Title VII based on a failure to accommodate theory, an employee must show that (1) the employee "held a sincere religious belief that conflicted with a job requirement," (2) the employee "informed their employer of the conflict," and (3) the employee was "disciplined for failing to comply with the conflicting requirement." *Fallon v. Mercy Cath. Med. Ctr. of Se. Pa.*, 877 F.3d 487, 490 (3d Cir. 2017). "Plaintiffs are not required to establish each element to survive a motion to dismiss; they must simply allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of their claims." *Finkbeiner v. Geisinger Clinic*, 623 F. Supp. 3d 458, 465 (M.D. Pa. 2022) (citing *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016)).

A district court's inquiry into whether a plaintiff has plausibly plead the first prong of a prima facie religious discrimination claim is limited to determining whether the belief is (1) "sincerely held" and (2) religious within the plaintiff's "own scheme of things." *Welsh v. United States*, 398 U.S. 333, 339 (1970) (quoting *United States v. Seeger*, 380 U.S. 163, 185 (1965)).

With respect to the first prong of this inquiry, "[w]hether a belief is sincerely held is a question of fact." *Geerlings v. Tredyffrin/Easttown Sch. Dist.*, 2021 WL 4399672, at *6 (E.D. Pa. Sept. 27, 2021) (citing *Seeger*, 380 U.S. at 185).

4

With respect to the second prong, determining whether a plaintiff's beliefs are religious "presents a most delicate question." *Africa v. Pennsylvania*, 662 F.2d 1025, 1031 (3d Cir. 1981). "[I]t is nonetheless incumbent upon the court to ensure that the alleged beliefs are rooted in a plaintiff's religion and are entitled to the broad protections guaranteed thereunder." *Aliano v. Twp. of Maplewood*, 2023 WL 4398493, at *5 (D.N.J. July 7, 2023) (citing *Fallon*, 877 F.3d at 490). "The notion that all of life's activities can be cloaked with religious significance" cannot transform an otherwise secular idea into a religious belief. *Africa*, 662 F.2d at 1035. "[T]he very concept of ordered liberty" precludes allowing any individual "a blanket privilege 'to make his own standards on matters of conduct in which society as a whole has important interests.'" *Africa*, 662 F.2d at 1031 (quoting *Wisconsin v. Yoder*, 406 U.S. 205, 215–16 (1972)).

The Third Circuit has adopted the three *Africa* factors to differentiate between views that are "religious in nature" and those that are "essentially political, sociological, or philosophical." *Fallon*, 877 F.3d at 490–91 (quoting *Seeger*, 380 U.S. at 164); *Africa*, 662 F.2d at 1032. A judge must determine whether the beliefs in question (1) "address fundamental and ultimate questions having to do with deep and imponderable matters," (2) "are comprehensive in nature," and (3) "are accompanied by certain formal and external signs." *Fallon*, 877 F.3d at 491 (quoting *Africa*, 662 F.2d at 1032) (cleaned up).

The *Africa* court tackled the issue of analyzing non-traditional "religious" beliefs or practices by "look[ing] to familiar religions as models in order to ascertain, by comparison, whether the new set of ideas or beliefs is confronting the same concerns, or serving the same purposes, as unquestioned and accepted 'religions.'" *Africa*, 662 F.2d at 1032 (quoting *Malnak v. Yogi*, 592 F.2d 197, 205 (3d Cir. 1979) (Adams, J., concurring)); *Fallon*, 877 F.3d at 491 (describing the process as considering "how a belief may occupy a place parallel to that filled by

Case 1:23-cv-00945-RGA   Document 11   Filed 02/05/24   Page 6 of 15 PageID #: 110
God in traditionally religious persons."). The *Africa* factors were adopted as "three 'useful indicia' to determine the existence of a religion" pursuant to this "definition by analogy" approach. *Africa*, 662 F.2d at 1032. Their applicability to a person who professes a more widely recognized, "traditional" religion is a little less obvious.[2] However, because individuals cannot "cloak" all personal beliefs "with religious significance," a court must still scrutinize whether a sincerely held belief, asserted by someone claiming a recognized religion, is sufficiently connected to their religion. *Id.* at 1035; *see Griffin v. Massachusetts Dep't of Revenue*, 2023 WL 4685942, at *5 (D. Mass. July 20, 2023) ("[T]he issue in this case is not whether plaintiff has asserted a plausible claim that she has a personal religious faith. . . . Plaintiff does not claim that she has suffered unlawful discrimination because she believes in God. Rather, she claims that she has suffered unlawful discrimination because she was required to comply with the COVID-19 vaccination requirement. The critical question, therefore, is whether the complaint alleges sufficient plausible facts from which it could be reasonably inferred that being vaccinated against COVID-19 violates a tenet or principle of her religious belief.").

Of course, individuals may have religious beliefs which are not widely accepted within their religion. *See Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 708 (1981) ("The guarantee of free exercise is not limited to beliefs which are shared by all of the members of a religious sect"); 29 C.F.R. § 1605.1 ("The fact that no religious group espouses such beliefs or the fact that the religious group to which the individual professes to belong may not accept such belief will not determine whether the belief is a religious belief of the employee or prospective employee."). Beliefs of this nature would, logically, fail to be sufficiently linked to the

---

[2] Plaintiff follows a recognized religion that already meets the three *Africa* factors. (*See* D.I. 1 ¶ 17).

6

individual's claimed religion and need to satisfy the *Africa* standard to qualify as religious beliefs.

"[The DDEA] prohibits employment discrimination in statutory language nearly identical to Title VII." *Spady v. Wesley Coll.*, 2010 WL 3907357, at *3 n. 4 (D. Del. Sept. 29, 2010); *see* DEL. CODE ANN. tit. 19, § 711(b). "[Courts] evaluate plaintiffs' DDEA claims under the same framework used to evaluate Title VII claims." *Spady*, 2010 WL 3907357, at *3 n. 4 (citing *Witcher v. Sodexho, Inc.*, 247 F. App'x 328, 329 n. 1 (3d Cir. 2007); *Hyland v. Smyrna Sch. Dist.*, 608 F. App'x 79, 83 n. 5 (3d Cir. 2015) (instructing that "the standards under Title VII and the DDEA are generally the same").

### C. Disparate Treatment

To establish a prima facie case of religious discrimination under Title VII based on a disparate treatment theory, an employee must show that (1) the employee is "a member of a protected class," (2) the employee "suffered an adverse employment action," and (3) "nonmembers of the protected class were treated more favorably." *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 281–82 (3d Cir. 2001).  Depending on whether the plaintiff proceeds under a pretext or mixed-motive theory, they must ultimately prove that their protected status was either a "motivating" or a "determinative" factor in the employer's challenged action. *Connelly*, 809 F.3d at 787–88.

## III.    DISCUSSION

### A. Failure to Accommodate

At this stage of the case, only one issue exists—whether Plaintiff has sufficiently pled that the belief upon which her objection to receiving the COVID-19 vaccine was based is a religious belief.  "[T]o adequately plead a 'religious belief,' a plaintiff must allege some facts

regarding the nature of her belief system, as well as facts connecting her objection to that belief

system." *Aliano*, 2023 WL 4398493, at *5. "In other words, she must demonstrate that her

objection arises from a subjective belief that is tied to her belief system which meets the *Africa*

factors." *Id.* (citing *Africa*, 662 F.2d at 1032; *Fallon*, 877 F.2d at 492–93 (concluding that the

plaintiff's "anti-vaccination beliefs are not religious" but providing "[t]his is not to say that anti-

vaccination beliefs cannot be part of a broader religious faith; in some circumstances, they can,

and in those circumstances, they are protected")); *see also Brown v. Child.'s Hosp. of Phila.*, 794

F. App'x 226, 227 (3d Cir. 2020) ("[I]t is not sufficient merely to hold a 'sincere opposition to

vaccination'; rather, the individual must show that the 'opposition to vaccination is a religious

belief.'" (quoting *Fallon*, 877 F.3d at 490)); *Griffin*, 2023 WL 4685942, at *5; *Ellison v. Inova

Health Care Servs.*, 2023 WL 6038016, at *6 (E.D. Va. Sept. 14, 2023) (A plaintiff should

"provide[] sufficient allegations regarding [their] subjective personal beliefs, how those beliefs

are related to [their] faith, and how those beliefs form the basis of [their] objection to the

COVID-19 vaccination."). Defendant argues that Plaintiff's objection to the vaccine stems from

Plaintiff's personal moral code rather than from her religious beliefs.[3] (D.I. 7 at 7–14; D.I. 9 at

5–7).

---

[3] Defendant does not challenge Plaintiff's assertion that her religious faith of non-denominational
Christianity meets the *Africa* test. Rather, Defendant argues the beliefs on which Plaintiff's
objection to the vaccine is based are secular beliefs based on Plaintiff's personal moral code, as
opposed to religious beliefs that form a part of Plaintiff's Christian faith. (*See* D.I. 7 at 7–14;
D.I. 9 at 5–7). I therefore address only the questions at issue: whether Plaintiff has sufficiently
connected her objection to the vaccine to a religious belief tied to her Christian faith or whether
the beliefs that form the basis of Plaintiff's objection would otherwise satisfy the *Africa* standard.

Plaintiff identifies three categories of beliefs which she argues qualify as religious beliefs.[4] (*See* D.I. 10 at 6 (placing Plaintiff under the "Created in the Image of God," "Cannot change God Given Immune System/Healing Power rests with God," and "Cannot Defile Body Because it is a Temple of the Holy Spirit" categories); D.I. 1 ¶ 19). For the following reasons, I find Plaintiff has failed to adequately plead facts that show any of these categories are religious beliefs that form the basis of her objection to the COVID-19 vaccine.

### 1. "God-given Immune System" Belief

Plaintiff's exemption request form states, "I am created in the image of God and hold fast to His assurance, that He is my provider, protector, healer and physician." (D.I. 1-1, Ex. A, at 2 of 7). Plaintiff states that both her mother and her "have been exposed to [COVID-19] positive" individuals, and, "God has fully protected us both from transmission." (*Id.* at 7 of 7). Plaintiff, however, fails to explain how her religious beliefs prohibit her receiving the COVID-19 vaccine.

Instead, Plaintiff focuses largely on Plaintiff's concerns with the "potential . . . adverse physical health outcomes" from receiving a vaccination "that normally would undergo 5 years of clinical research." (*Id.* at 6 of 7). Plaintiff's form spends a substantial amount of space discussing scientific studies of the vaccine:

> I have researched available information on this vaccination, and as medical professionals, we are all aware, it is changing and developing as more time goes on and more individuals are vaccinated. The CDC site itself states, "We're still learning." There are over 800,000 reports of COVID-19 vaccine-related injuries to VAERS. Research out of China reveals high concentrations of components of the vaccine in specific organs, such as the brain, the uterus in women and the liver.

---

[4] Plaintiff's exemption request form discusses the American Nurses Association ("ANA") Code of Ethics. (D.I. 1-1, Ex. A, at 6 of 7). Plaintiff does not argue that this code of ethics is part of her religious belief system in her briefing and instead focuses on the beliefs arising from her Christian faith. (*See* D.I. 8 at 1–2, 15; *see also* D.I. 1 ¶ 19; D.I. 10 at 6). I will therefore treat the beliefs arising out of the ANA Code of Ethics as secular beliefs (excepting those beliefs that overlap with religious beliefs stemming from Plaintiff's Christian faith) for the purposes of this motion.

> Since there are known coagulation problems related to COVID-19, this vaccination
> has the potential to affect coagulation in vaccinated individuals, as the liver
> synthesizes all coagulation factors and their inhibitors. I am personally seeing an
> increase in patients presenting with pulmonary emboli. I personally know multiple
> vaccinated women with increased vaginal bleeding and new diagnosis of uterine
> hyperplasia. There are also reports of myocarditis and pericarditis in young men
> after receiving the vaccine, prompting Finland, Sweden and Denmark to stop
> administering the Moderna vaccine. In June the United States Federal (sic) Drug
> Administration added a warning to the fact sheets for the Pfizer/BioNtech and
> Moderna mRNA-based COVID-19 vaccines about the risks for both myocarditis
> and pericarditis. There are also similar studies and results out of Israel. If these
> health conditions were presenting during clinical trials, the trials would be stopped
> and the participants told and protected (veracity and nonmaleficence). The current
> vaccines have waning efficacy requiring boosters which will soon too be mandated.
> Dr. Anthony Fauci has just reported vaccinated individuals are in grave danger of
> developing COVID-19 due to the vaccines' waning efficacy and immunity.

(*Id.* at 6–7 of 7). In addition to citing these scientific studies, Plaintiff also mentions that she has

"5 peers that were all fully vaccinated that tested positive for [COVID-19]." (*Id.* at 7 of 7).

Plaintiff's objection is "predicated fundamentally on her concerns with the safety of the

vaccine." *Passarella v. Aspirus, Inc.*, 2023 WL 2455681, at *5 (W.D. Wis. Mar. 10, 2023).

Plaintiff does "not articulate any religious belief that would prevent her from taking the vaccine

if she believed it was safe." *Id.* Plaintiff's focus on the efficacy and potential harm caused by

the vaccine demonstrate that Plaintiff's objection to the vaccine is based on scientific and

medical beliefs. These beliefs do not qualify as religious beliefs under *Africa*. "It takes more

than a generalized aversion to harming the body to nudge a practice over the line from medical to

religious." *Geerlings*, 2021 WL 4399672, at *7; *see also Fallon*, 877 F.3d at 492. "The notion

that we should not harm our bodies is ubiquitous in religious teaching, but a concern that a

treatment may do more harm than good is a medical belief, not a religious one." *Geerlings*, 2021

WL 4399672, at *7 (quoting *Fallon*, 877 F.3d at 492) (cleaned up).

At oral argument, Plaintiff's counsel took the position that "[h]arming my body is the

religious belief" expressed by Plaintiff. (Hearing Tr. at 34:15–35:12 ("[I]f I believe [the vaccine]

is going to cause long-term harm to my body, then my truly-held religious belief is that my body is a temple of the Holy Spirit, and I should put nothing in my body that's going to harm it. That's religious belief.")). Plaintiff also repeatedly asserts that she "invoke[s] God in all aspects of [her] life" and that she "seek[s] God's counsel in all things in reverent submission to Him in all things." (D.I. 1-1, Ex. A, at 5, 7 of 7 (citing Hebrews 5:7); *see id.* at 2 of 7 ("I seek God in ALL things. I do not use the word religion as others do because I don't practice religion, I live my faith."); *id.* at 6 of 7 ("I have shared that I do all things as I am working for God not man.")). Plaintiff's argument effectively seeks to "cloak[] with religious significance" her concern that the vaccine will harm her body. *Africa*, 662 F.2d at 1035. The Third Circuit has already rejected such a position. *Id.* (explaining "[t]he notion that all of life's activities can be cloaked with religious significance" cannot transform an otherwise secular idea into a religious belief). Several other district courts handling similar religious discrimination cases involving the COVID-19 vaccine have also found such medical judgments do not qualify as religious beliefs. *See, e.g.*, *McKinley v. Princeton Univ.*, 2023 WL 8374486, at *4 (D.N.J. Dec. 1, 2023); *Ellison*, 2023 WL 6038016, at *5; *Winans v. Cox Auto, Inc.*, 2023 WL 2975872, at *4 (E.D. Pa. Apr. 17, 2023); *Ulrich v. Lancaster Gen. Health*, 2023 WL 2939585, at *5 (E.D. Pa. Apr. 13, 2023); *Passarella*, 2023 WL 2455681, at *5–7; *Geerlings*, 2021 WL 4399672, at *7; *contra, Aliano*, 2023 WL 4398493, at *8–9.

Plaintiff insists that she has a "God given right over [her] body and the right to refuse a vaccination." (D.I. 1-1, Ex. A, at 6 of 7; *see also id.* ("I believe in an individual's right to choose what is best for them and their family.")). Plaintiff also asserts, "I have an unsettled spirit about this vaccination and have prayed continuously for God to reveal His heart and guide me in this and every decision I make." (*Id.* at 2 of 7). She goes on to say, "I have asked God fervently to

take this burden of the vaccine from me and He has not, in fact I feel more moved to obedience to God in this situation, than when the vaccine was first discussed." (*Id.*). Neither of these assertions save Plaintiff's claim. Allowing Plaintiff a "God given right to make [her] own choices," *Finkbeiner*, 623 F. Supp. 3d at 465, would enable Plaintiff to "make [her] own standards on matters of conduct in which society as a whole has important interests." *Africa*, 662 F.2d at 1031 (citing *Yoder*, 406 U.S. at 215–16). "[T]he very concept of ordered liberty" precludes this result. *Africa*, 662 F.2d at 1031. Allowing Plaintiff the ability to object to anything based on the practice of "praying on it" would likewise amount to the type of "blanket privilege" that does not qualify as religious belief under *Africa*. Several other district courts handling similar religious discrimination cases involving the COVID-19 vaccine have also found such beliefs to amount to "blanket privileges" that do not qualify as religious beliefs. *See, e.g.*, *Lucky v. Landmark Med. of Mich., P.C.*, 2023 WL 7095085, at *4–7 (E.D. Mich. Oct. 26, 2023); *Ellison*, 2023 WL 6038016, at *5; *Ulrich*, 2023 WL 2939585, at *5; *Blackwell v. Lehigh Valley Health Network*, 2023 WL 362392, at *8 (E.D. Pa. Jan. 23, 2023); *Finkbeiner*, 623 F. Supp. 3d at 465.

Plaintiff's counsel argued that whether a belief amounted to a "blanket privilege" presents an issue of sincerity that should be reserved for a jury. (Hearing Tr. at 33:3–14). The *Africa* court, however, indicated that a principal reason that courts engaged in the practice of making "uneasy differentiations" between religious and nonreligious beliefs was to prevent any individual from retaining a "blanket privilege 'to make his own standards on matters of conduct in which society as a whole has important interests.'" *See Africa*, 662 F.2d at 1031. I find it proper to consider this question when dealing with religiosity. As noted above, other district courts have likewise examined the "blanket privilege" question at the motion to dismiss stage.

### 2.  "Image of God" Belief

Plaintiff's exemption form states, "I am created in the image of God and hold fast to His assurance, that He is my provider, protector, healer and physician." (D.I. 1-1, Ex. A, at 2 of 7). Plaintiff, however, provides no information regarding how this "Image of God" belief prohibits her from receiving the COVID-19 vaccine. The context of the single relevant sentence in the exemption form suggests some overlap between this belief and Plaintiff's "God-given Immune System" belief. To the extent such overlap exists, as discussed in the prior section, Plaintiff's exemption form largely focuses on her concerns regarding the vaccine's efficacy and potential adverse effects, her "right to choose" whether to receive the vaccine, and her practice of "ask[ing] God fervently to take this burden of the vaccine from me." Such beliefs do not qualify as religious beliefs under *Africa*. *See supra* Section III.A.1.

### 3.  "Body is a Temple" Belief

Plaintiff's exemption form states, "[M]y body is a temple of the Holy Spirit, gifted to me by the death of my savior, who died in my place for the forgiveness of my sins." (D.I. 1-1, Ex. A, at 2 of 7 (citing 1 Corinthians 6:19 ("Do you not know that your bodies are temples of the Holy Spirit, who is in you, whom you have received from God? You are not your own.")). Plaintiff, however, provides no information regarding how this "Body is a Temple" belief prohibits her from receiving COVID-19 vaccine. "Plaintiff does not describe her religious beliefs or principles in any meaningful way, or how they relate to vaccines generally, or the COVID-19 vaccine specifically." *Griffin*, 2023 WL 4685942, at *7. Plaintiff "must provide more than conclusory allegations that a belief is religious; [she] must allege facts explaining how a subjective belief is religious in nature and connect [her] objection to that belief." *Ellison*, 2023 WL 6038016, at *7.

13

For the reasons stated above, I find Plaintiff's Complaint does not plausibly allege that Plaintiff's objection to receiving the COVID-19 vaccine was based on a sincerely held religious belief. At oral argument, Plaintiff's counsel agreed that, in the event that I found a plaintiff had not adequately pled a religious belief, dismissal with prejudice was the proper path forward. (Hearing Tr. at 65:1–9). I will therefore dismiss Plaintiff's failure to accommodate claim under Title VII with prejudice.

**B. Disparate Treatment**

Defendant argues that Plaintiff has failed to sufficiently plead a religious discrimination claim under Title VII based on disparate treatment. (D.I. 7 at 14). Plaintiff states that she has not yet pled disparate treatment. (D.I. 8 at 19–20). I agree with Defendant that Plaintiff's assertion of "differential treatment" presents some confusion about whether a disparate treatment claim has been raised. (D.I. 9 at 8 n. 18). Nevertheless, since Plaintiff states she is not now pleading disparate treatment, I accept that she is not, and I will dismiss Defendant's argument as moot.

**C. Plaintiff's DDEA Claims**

A federal court has supplemental jurisdiction over a state law claim when the claim "arise[s] out of a common nucleus of operative fact" with the claims over which the court has original jurisdiction. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966); *see* 28 U.S.C. § 1367(a). A federal court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. § 1367(c)(3). Given my disposition of Plaintiff's Title VII claims, I decline to exercise supplemental jurisdiction over Plaintiff's remaining DDEA claims. I will dismiss Plaintiff's claims under Count II without prejudice.

14

## IV.    CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (D.I. 6) is GRANTED in part and DISMISSED as moot in part.

An appropriate order will issue.